First case for argument is 19-1353, Egenera v. Cisco. Mr. Quigley, whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is James Quigley, and I represent Appellant Egenera, Inc. The Board made two errors of law in this case. Quick question. Do you agree that independent claim one of the 044 is representative of the claims on appeal? Yes, Your Honor. Okay, good. Thank you. So, as I noted, the Board made two independent errors of law in this case, both of which weren't reversal. The first is that the Board failed to apply this Court's rule of reason to its priority analysis. Contrary to this Court's instructions in cases like NFC, the Board ignored the evidence that was in front of it. The Board failed to consider all of the evidence to test the credibility of the inventor's story, and this applies both to conception and reduction to practice. The Board's second error of law is in failing to consider the full scope and context of the prior art in this case. As this Court instructed us in Bosch and later cases, the full scope and context of the prior art needs to be considered when doing a proper obviousness analysis. And here, the Board applied nothing more than hindsight, stripping away all of the context of Ma, and using it as a mere dictionary in its analysis. The arguments you raise are difficult for me because they're all nebulous. And, you know, we have various principles. The Board doesn't need to address every single issue for us to be satisfied that they actually considered the record. And then you've got globbed on top of that, in your case, that they thought your presentation of some of the evidence for corroboration, what did they call it, an archaeological, this isn't an archaeological dig where we have to dig through stuff and get an explanation. So I'd like you to be much more specific because your general complaints aren't helpful to me in trying to ascertain whether the Board did a good enough job in this case. Just let me know that. Yes, Your Honor. So, in this case, eGENERA did present its evidence to the Board. eGENERA put that evidence in its brief, its patent owner response brief. It brought that evidence forth in the form of witness testimony and it explained it at the hearing. And the Board did address some of that. I mean, the Board's not compelled to address every single document that you put in, but the Board did give a detailed explanation of why it was concluding what it was concluding, and it did refer to portions of the evidence. Right. And it didn't accept any inventor testimony as properly corroborated. So I think the failure on the part of the Board is that for the single disputed limitation, there was a particular document that was in front of the Board, Exhibit 2024, Appendix Pages 2212 to 2213, which was talked about by Inventor Geng in his declaration at Paragraph 21, Appendix Pages 1823 to 1824. And this was the document when it was in the brief, it was excerpted, and it was annotated, and there was a parenthetical cite to Mr. Geng in the brief, Appendix Page 394. And when the Board asked at the hearing, What evidence do you have as to this missing limitation? There's a single disputed limitation here as the conception, the failover logic, including the virtual MAC address. That document and Mr. Geng's testimony was what we pointed to. The Board did not discuss that document or that paragraph from Mr. Geng in its final written decision. We're not asking your honors to re-weigh the evidence here. The evidence was never weighed. We were asked the question, What evidence do you have? And we pointed to it, and then there was no discussion of it in the final written decision. Okay, well, it's just difficult to ascertain. There were a large number of documents here that you presented, right? That's correct. So you're not suggesting that the Board has to discuss every one of us, every one of those documents, for us to be satisfied that the Board reviewed it and applied the proper standard to it, right? So you say there's something special about this document because this was the number one thing that you were relying on? Yes, Your Honor, I think you're right. What document are you talking about again? In front of the Board, it was exhibit number 2024. Where in the appendix is it? 1812, sorry, 2212 to 2213. Where in 2212 to 2213 does it mention reassigning a virtual MAC address? So on page 2212, it mentions that the networking configuration has a virtual Ethernet interface, and that virtual Ethernet interface, according to Mr. Gang in his testimony, is what includes the virtual MAC address. So it doesn't. Sorry, Your Honor? So it doesn't. It does not use the word virtual MAC address in that document. So here, Inventor Gang explained the document in the context of how he as an inventor understood it. There are other documents from eGenera that were also cited in front of the Board in the briefing that explained that eGenera was not using Ethernet as its underlying physical network. It was using something called GigaNet. It knew, and as the documents show, they had to simulate MAC addresses. Wait, can you go back? So you said you agree this document doesn't actually specify a virtual MAC address, but your expert says it's equivalent to it. Where in that expert testimony does he say that? You were pointing us to 1824, I think. Is that where it is? I apologize. That's not the expert. That's Inventor Scott Gang. It was 1823 to 1824. Well, where does he say that? In his declaration, I think it's earlier paragraphs, starting with paragraph 1415, which I believe appendix. How do you deal with Jepson v. Eggly? I apologize, Your Honor? It's a CCPA 1956 case. Your expert testimony is a matter of law. It can't make up the deficiency where it's not mentioned. Here, we're not speaking to expert testimony. It's inventor testimony. And the inventor's story, under the rule of reason, is what we test using corroborating evidence. And his story, Inventor Gang's story, is corroborated by this evidence. There's nothing that contradicts it. Okay, so tell us again what we're talking about on 1824. 1823 to 1824 is paragraph 21, where Inventor Gang is discussing this document, what was Exhibit 2024 but is now 2212 to 2213 in the appendix. And he's discussing how the document includes storage and networking configurations that would include the virtual interface and would include the things that he had discussed previously in his declaration that are part of that, the virtual MAC address. But in 14, paragraph 14 in his declaration, it's circular. He says, our solution did this in part through the use of virtualized media access control addresses, MAC addresses. That statement presumes the conclusion that's not in the discussion in the patent. I apologize, Your Honor. There's no mention of a virtual MAC address, is there? In that document? Right. In that document, there's not the same virtual MAC address. There's a virtual Ethernet interface, which is what one would understand would include the MAC address. Because to use Ethernet, you need a MAC address. And as he generally has other documents noted, for instance... What does it specifically say in his declaration that Ethernet is the same as the virtual MAC address? That the virtual Ethernet interface is the same? Yeah. It's not that they're the same. It's that the interface has to have a MAC address. Where does he say that? I don't have that site in front of me. I apologize, Your Honor. Well, I mean, you're acting... I mean, your suggestion is that there's such incontrovertible evidence that the board, a reasonable person, could not have come to the opposite conclusion. But you're basing it on a bunch of pretty vague inferences and general testimony. This is the problem. The document you point to us doesn't say anything about virtual MAC addresses. And you can't point to anything in the inventor testimony other than a conclusory statement about our solution did this. But it doesn't explain how it did it in a certain amount of time or have any corroboration. I think there are other documents that do corroborate. Well, this is the document you pointed to. I assume you would have said relied on your best evidence first and not saved it for later. So in this case, the inventors do not have a single document that describes something in the level of detail of the patent. This was a product that they were working on in the year 2000 through 2001. And these are specification documents that they had put together over time. And to them, virtual Ethernet interface was clear that it included a virtual MAC address. Because as they said in other documents, they were not using Ethernet. They had to simulate Ethernet and therefore use simulated MAC addresses. So that evidence was in front of the board. Those other documents were also in front of the board. As were numerous others. And the board did. I mean, actually, it did cite to, I think, exhibit 2024. You're right. It didn't go through a detailed analysis of each one of those exhibits. But I'm not sure I understand or appreciate why that was necessary. I mean, they do have an analysis. They do complain that it's hard to get through all of this and to understand the significance. But they do their best to try to do that. And under these circumstances, given the size of the record and the arguments that were made, I'm having a hard time. Is it really just on that one document that you think that document was of such significance, they knew it was of such significance, and they failed to explain it? That's your concern? I think that's right, Your Honor. It's that document in context of others.  was raised. This wasn't a document that was buried. This wasn't inventor testimony that was buried. This was material that was presented in response to the board's questioning in appendix pages 571 to 573. So that's conception. As to diligence, we think the evidence here shows, and the board, again,  that e genera from November of 2000 through January of 2002. Does diligence matter if we agree with the board that you haven't shown conception prior to the relevant date? You would not need to reach diligence if you found it against us as to conception. And your comment, which you just made five seconds ago, which is the board didn't consider. We don't know whether the board considered it or not. Your argument is more clearly the board did not address, right? The only evidence that we have of what the board considered is what is in its written decision, which here doesn't cite to that document. No, the evidence of what the board considered is what was in the record, and we presume that the APJs properly considered the record before them. We're not grading them on the exhaustiveness of their opinion. Our standard review is whether there's substantial evidence. It seems to me that you're re-arguing it de novo and pointing to a bunch of evidence that you think should have carried the day. Your friend is going to get up on the other side and say, here's the evidence we put forth that supports the board's decision. This is not our job to re-weigh the evidence. You can point to a bunch of evidence in the record that you think the board didn't properly consider, but we're presuming that they did. Unless you have the equivalent of a smoking gun that says, we invented this on X date and here's our lab notes that show all this, then I think you're going to have a hard time. We've given you the opportunity on conception to show that document, and you pointed to what you think is the best document. Do you have anything else on this? That document is our best document at that level of detail with the understanding from other documents that the virtual MAC address was being used. Well, at that point, if we don't accept your conception argument, it looks like you're abandoning the rest of the combination arguments, given your limited time. A word. So I've talked about diligence. We still have the obviousness issue. We do, and you have, what, two and a quarter minutes? We'll do this really quick. As to obviousness, the board was required to consider the full scope and context of the prior art. The board didn't do that for MA here. The board, you can see this in its own written decision on appendix pages 33 to 34. There's about a half a page discussion of MA. MA was used as a dictionary here for the sole purpose of the phrase virtual MAC address. The board stripped all the context away. You can see that by looking at those appendix pages. MA teaches a group of network devices, not computer processors, as MA makes clear, that are all pre-assigned a single virtual MAC address. Not two, not three, but one. And when the primary device fails, the ownership of that single MAC address is transferred to a secondary device. Now, the board explains that on pages 33 to 34 in the appendix, as part of its final written decision. But when we get to how the board distills MA down to the claims on appendix page 60, the board says MA teaches virtual MAC addresses that are reassignable upon failover to a replacement device. But MA doesn't teach virtual MAC addresses. It teaches a virtual MAC address. And the claims here require multiple. MA doesn't teach reassignment. It teaches transfer. The MAC address is already assigned to the group that the network device is a part of. And third and finally, MA doesn't teach any generic replacement device. MA teaches a network device. MA on appendix page 1042 differentiates between network devices and hosts, where hosts would be computer processors. MA isn't concerned about hosts. MA is concerned with network devices, bridges, switches, and routers, things that our computers might use to access a network. And so the board doesn't explain. There's no explanation from appendix pages 33 to 34 to appendix page 60 of how the board distilled MA down to that phrase, other than using hindsight. Okay. You've exhausted your rebuttal. We'll restore some time. Thank you, Your Honor. Good morning. May it please the Court, I'm Robert Theo Foster on behalf of Appalachia Cisco Systems. I'd like to direct the Court's attention to appendix page 40, where the board did discuss very similar disclosure in eGenera's alleged corroboration evidence dealing with a software configuration. So that's a different phrase than the node configuration that Mr. Quigley was directing the board to or, I'm sorry, directing the Court to on appendix page 2212. But the board did address eGenera's evidence regarding the movability of a configuration, and it noted that there was no evidence that the configurations that would be moved included a virtual MAC address. So I believe the board did have in front of it the evidence that eGenera is bringing to the Court's attention today and found it wanting. Regarding the obviousness case, I would direct the Court's attention to the board's detailed analysis of the obviousness combination, beginning on appendix page 58 or so. And note that the board referred extensively to both Aziz and Ma and the detailed testimony of Dr. Shenoy, and then additionally to the Marcus Pryor art reference, which showed... You can assume we read it. If the Court doesn't have any questions for me, I'll cede my time. Thank you. Very briefly, Your Honors. I just want to reiterate the point on conception that there's a single limitation in this case that's in dispute. It's a single document that we pointed to at the hearing that's supported by inventor testimony as well as expert testimony. The board said nothing about that in its final written decision. We think that's inappropriate under the NFC case. Well, you say there's a single document. How many documents did you submit in this case? I mean, here the suggestion is that all we needed was this one document. This one document was a smoking gun, and it did it for us. How many documents did you... How many exhibits were there? In terms of corroboratory exhibits? Yeah. Seven or eight, but I think it's important to remember that those were submitted in terms of all six claims as to a number of different limitations. So not all of them were necessarily cited to the board. And we're not talking about the board having to dig into the documents on its own. We're talking about the excerpts that were provided to the board in the patent owner response. Did you file a motion for reconsideration here? We did not. Instead of waving the flag and saying, hey, you forgot something. You missed something. You didn't deal with the most important document in this case. Just call it to the board's attention. We did not file such a motion. Was there argument? Or argument before the board? I apologize. That's what I mean by the hearing. When the board at the hearing asked about this single limitation, this was the document that we talked about. Well, how does that help you? I mean, you pointed out to them specifically they were aware of it. We presume that they considered it and rejected it as insufficient. From the board's opinion, when the board says there's no corroboration as to this limitation, and that's the corroboration that we pointed to for the board, we think that's inappropriate. They find it insufficient. Under NFC, we think that the board was in error here. That's all I have, Your Honor. Thank you for your time. Thank you. We thank both sides for cases submitted.